| | | |
|---|---|---|
| STACEY HAGERMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:16-cv-00093-JAW |
| | ) | |
| JEH JOHNSON, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON
DEFENDANT'S MOTION TO DISMISS AND
ORDER ON PLAINTIFF'S MOTION TO AMEND**

In this action, Plaintiff Stacey Hagerman alleges several claims regarding her employment with the Transportation Security Administration of the United States Department of Homeland Security (TSA), which employment Defendant terminated in October 2012.

The matter is before the Court on Defendant's Motion to Dismiss and Change Track Assignment (ECF No. 9), through which motion Defendant asserts Plaintiff's Title VII claims are precluded by the doctrine of res judicata and that Plaintiff's remaining claim under the Civil Service Reform Act should proceed exclusively on the administrative track. As part of her response to the motion to dismiss, Plaintiff filed a motion to amend her complaint (ECF No. 18), which motion is also before the Court.

Following a review of the parties' submissions and after consideration of the parties' arguments, I grant the motion to amend and recommend the Court deny without prejudice Defendant's motion to dismiss and change track assignment.

# I. BACKGROUND FACTS AND PROCEDURE

Plaintiff alleges adverse employment actions against her following her complaints that her supervisor – through reprimands and insults, letters of counseling, letters of discussion, and one or more short-term suspensions – was subjecting her to a hostile work environment based on her gender and in retaliation for her engagement in a protected Equal Employment Opportunity (EEO) activity. On July 20, 2012, Plaintiff complained of sex discrimination and retaliation to the TSA's EEO office, which opened an investigation. (Am. Compl. ¶ 57.)

On September 13, 2012, Plaintiff's supervisor, Assistant Federal Security Director Kelly, proposed that Plaintiff be removed from her position. (Am. Compl. ¶ 58.) Assistant Director Kelly's supervisor, Federal Security Director Dyer, considered the proposal and, on October 9, 2012, issued a decision that terminated Plaintiff's employment. (Id. ¶ 59.)

*Administrative Proceedings*

According to Plaintiff, on September 27, 2012, in the brief period between the removal proposal and her actual removal, Plaintiff filed a formal complaint with the TSA's EEO office. (See Complaint in *Hagerman v. Johnson*, No. 2:13-cv-00446-JAW ("*Hagerman I*"), ¶ 5.) According to the Office for Civil Rights and Civil Liberties, U.S. Department of Homeland Security (the "Department"), which issued a final agency decision adverse to Plaintiff's contentions on September 9, 2013, Plaintiff filed her formal complaint on October 10, 2012, the day after her removal. (Final Agency Decision, ECF No. 9-1 (this docket).) In its Final Agency Decision, the Department noted that TSA, not Plaintiff, requested the final agency decision, which request TSA made on July 1, 2013.

(ECF No. 9-1, PageID # 61.)  Among the arguments the Department considered was Plaintiff's contention that certain discrete acts were part of the TSA's "'mounting plan' to terminate her employment."  (Id., PageID # 65.)  In its decision, the Department limited its review to the discrete acts imposed in advance of Plaintiff's removal and to the issue of whether the combined pre-removal record supported Plaintiff's claim of a hostile work environment.

According to her pleadings in this case, Plaintiff also filed a "mixed case" appeal and complaint of discrimination with the Merit System Protection Board (MSPB) in October 2012.  Although the mixed case evidently arose out of the same facts and circumstances as the EEO matter, the mixed case concerned Plaintiff's removal from employment.  (See Complaint, ECF No. 1, ¶ 7; Amended Complaint, ECF No. 18-1, ¶ 7.)  The MSPB exercised jurisdiction over the mixed case, and Plaintiff received an initial adverse decision from the MSPB administrative judge on June 2, 2014.  On appeal, the MSPB affirmed the decision of the administrative judge.  Plaintiff then elected to pursue an administrative appeal with the Equal Employment Opportunity Commission's Office of Federal Operations, which on January 14, 2016, denied Plaintiff's appeal.  (OFO Decision, ECF No. 9-2.)

*Hagerman I*

On December 3, 2013, following her receipt of the Department's final agency decision on her first administrative complaint, and while her mixed case was pending before the MSPB administrative law judge, Plaintiff, proceeding pro se, filed a civil action in this Court against Defendant.  In her complaint, Plaintiff alleged sex discrimination in

the terms, conditions, and privileges of employment, including the creation of a hostile work environment based on sex. Plaintiff also alleged retaliation based on her complaint of discrimination and the filing of her July 2012 administrative complaint with the EEO office. Plaintiff asserted all of her claims under Title VII of the Civil Rights Act of 1964. (Complaint in *Hagerman I*, ¶¶ 53, 62, 70, 76.)

Plaintiff did not describe her removal from employment in her complaint. Plaintiff, however, complained of "adverse employment actions," and she included among her losses the future loss of income and benefits. (*Id.* ¶¶ 70, 72.) In support of her hostile work environment claim, Plaintiff similarly complained of adverse employment actions, "loss of her employment for a period of time," and loss of future income and benefits. (*Id.* ¶¶ 76, 78, 79.)

On August 15, 2014, Plaintiff filed a motion to stay proceedings in *Hagerman I*. (ECF No. 14.) In the motion to stay, Plaintiff explained that the administrative judge had recently issued a decision on her administrative claim before the MSPB arising from her removal from employment, and that she was pursuing an appeal of the administrative judge's decision with the MSPB. In her motion to stay, Plaintiff asserted that a final decision was anticipated and that she intended to join her claim regarding her termination with her other claims in *Hagerman I*. (*Id.* ¶¶ 5, 9.) Plaintiff represented that the MSPB appeal involved "the same factual occurrences and legal questions" as those raised in *Hagerman I*, and that the issue of her termination should be joined "[i]n view of the near complete identity of the factual and legal questions at issue in the two claims." (*Id.* ¶¶ 10, 12.)

In response to the motion for stay, Defendant acknowledged that the two matters involved significant overlap, but disagreed "that the appeal currently pending before MSPB involve[d] the same factual occurrences and legal questions that [were] at issue" in *Hagerman I*. (ECF No. 15 at 2, ¶ 4.) Defendant consented to the motion to stay and indicated that, if the Court granted the motion and consolidated Plaintiff's existing and anticipated lawsuits, it would want Plaintiff to forego discovery concerning the then-pending claims because Plaintiff had not sought discovery in the pending action and requested the stay approximately one week before the close of the discovery period. (*Id.* at 4, ¶ 8(d).)

The Court stayed the matter until November 20, 2014, in anticipation of the MSPB's final decision. (ECF No. 16.) Following a November conference, the Court extended the stay until March 2, 2015. (ECF No. 20.) At a March 5, 2015, conference, Plaintiff informed the Court that she received an unfavorable final decision from the MSPB and that she had filed a further administrative appeal.[1] Plaintiff sought a brief continuance of the stay to consult with counsel, which request the Court granted. (ECF No. 24.) On March 13, 2015, counsel entered an appearance on behalf of Plaintiff and filed a stipulation of dismissal with prejudice, signed by both parties, with respect to the complaint in *Hagerman I*. (ECF No. 26.)

---

[1] Plaintiff's further appeal was with the EEOC's Office of Federal Operations.

*This Case*

Plaintiff filed this action pro se on February 16, 2016. In her complaint, Plaintiff asserts the following claims regarding her employment with Defendant: a Title VII claim of retaliation (Count I), a Title VII claim of disparate treatment based on sex (Count II), and a claim under the Civil Service Reform Act requesting judicial review of the final decision of the MSPB. (ECF No. 1 at 1.)

Plaintiff describes her case as a "mixed-case" appeal and complaint of discrimination arising out of her October 9, 2012, termination from employment. (*Id.* at 2, ¶ 7a.) Plaintiff asserts that after receiving the final decision of the MSPB, she appealed from that decision to the Equal Employment Opportunity Commission's Office of Federal Operations (OFO), and that on January 14, 2016, the OFO issued her a notice of right to file a civil action. (*Id.* at 2 – 3, ¶ 7b.)

In her complaint, Plaintiff describes the same employment history from which her claims in *Hagerman I* arose, which history involves the alleged adverse treatment by Assistant Federal Security Director Kelly. (*Id.* ¶¶ 10 – 59.) Plaintiff also references the October 9, 2012, notice of termination issued by Federal Security Director Dyer. (*Id.* ¶ 60.)

Defendant informed Plaintiff that her employment was terminated due to a lack of candor in connection with Plaintiff's report regarding a subordinate's Facebook posting of an image of an item in a passenger's bag. (*Id.* ¶ 62.) Plaintiff apparently did not disclose in her report that the subordinate had shown the image to Plaintiff. (*Id.* ¶ 67.) Plaintiff contends Defendant's stated reasons for termination were pretextual and were designed to

conceal the retaliatory animus toward Plaintiff based on her protected EEO activity. (*Id.* ¶ 64.)

In response to Plaintiff's complaint, Defendant filed the pending motion to dismiss, in which motion Defendant argues Plaintiff's Title VII claims are barred by the doctrine of res judicata, although Defendant concedes Plaintiff's request for judicial review of the administrative decision can proceed. (Motion to Dismiss, ECF No. 9.) In response to Defendant's motion to dismiss, Plaintiff filed a motion for leave to amend her complaint. In her proposed amended complaint (ECF No. 18-1), Plaintiff deleted former paragraph 9 (which related to her pro se status), and revised former paragraph 92 (now paragraph 91) "to clarify that only the plaintiff's October 9, 2012 removal action is at issue in her claim of disparate treatment sex discrimination." (Motion to amend at 2.) Plaintiff's proposed amended complaint thus can be read to assert Title VII claims limited to the issue of her termination.[2]

## II.    PLAINTIFF'S MOTION TO AMEND

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend

---

[2] Plaintiff's proposed amended complaint relies on the same history and circumstantial evidence on which her complaint in *Hagerman I* was based.

"freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).

In this case, Plaintiff filed the motion relatively early in the proceedings, and the proposed substantive modifications to the original complaint are not substantial. The proposed amendments simply confirm that Plaintiff's claim is based on the termination of her employment. Based on Defendant's motion to dismiss, Defendant was aware of the nature of the claim before the amendment. Plaintiff thus is entitled to amend her complaint as requested.

## III.     DEFENDANT'S MOTION TO DISMISS

As part of the assessment of Defendant's motion to dismiss, a review of the relevant administrative processes is instructive.

### A.     Federal Employees' Administrative Remedies for Discrimination under the Civil Service Reform Act

The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 1101 et seq., "establishes a comprehensive framework for evaluating employment actions taken against federal employees." *Rodgers v. Perez*, 139 F. Supp. 3d 67, 71 (D.D.C. 2015). Where discrimination in employment is concerned, the CSRA framework is designed to accommodate proceedings both through the federal equal employment opportunity (EEO) system overseen by the Equal Employment Opportunity Commission (EEOC) and through the federal merit protection system overseen by the Merit System Protection Board (MSPB). *Id.*

### 1.    *The EEO administrative process*

Discrimination in federal employment is prohibited under Chapter 21, subchapter VI of the Civil Rights Act, 42 U.S.C. § 2000e-16 (Title VII).  Enforcement of § 2000e-16 is delegated to the Equal Employment Opportunity Commission, which has authority to issue rules and regulations necessary to satisfy its responsibilities.  *Id.* § 2000e-16(b).[3]  The EEOC's jurisdiction extends to all complaints of discrimination and retaliation prohibited by Title VII.  29 C.F.R. § 1614.103(a).  Agencies subject to EEOC oversight are required to adopt the procedures for processing such complaints.  *Id.* § 1614.104(a).

The EEO procedures require, inter alia, the employee to file a complaint directly with the employing agency, following an initial counseling session.  *Id.* §§ 1614.105, 1614.106.  The complaint must set forth "the action(s) or practice(s) that form the basis of the complaint," and the complaint may be amended "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." *Id.* § 1614.106(c), (d).  Thereafter, the employee may also file a motion to amend the complaint with the administrative judge assigned to the matter.  *Id.* § 1614.106(d).  Upon the filing of a complaint or amended complaint, the EEOC process begins with an investigation by the employing agency.  *Id.* § 1614.108.  The employee can then request a hearing before an administrative judge.  *Id.* § 1614.109.  Following a decision by the administrative judge, the agency must take "final action."  *Id.* § 1614.110.  The employee may then file a civil action in federal district court or pursue a further administrative appeal

---

[3] It is the policy of the United States to insure equal employment opportunities for employees, without discrimination because of, inter alia, sex.  5 U.S.C. § 7201(b).

before the EEOC.[4] *Id.* §§ 1614.110, 1614.407. Upon notice of final action by the EEOC, the employee again has the right to file a civil action against the head of the agency. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. Any civil action is subject to the provisions of 42 U.S.C. § 2000e-5(f) through (k), which govern private sector Title VII claims. 42 U.S.C. § 2000e-16(d).

### 2. *The MSPB administrative process*

Significant adverse actions such as discharge or demotion are also subject to protection under the federal merit system.[5] *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012) ("If (but only if) the action is particularly serious—involving, for example, a removal from employment or a reduction in grade or pay—the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes.").[6] In particular, the merit system prohibits discrimination based on sex and retaliation. 5 U.S.C. § 2302(b)(1), (8), (9). An employee or former employee who maintains that "any personnel action taken, or proposed to be taken" against her is the "result of a prohibited personnel practice described in section 2302(b)(8)" may "seek corrective action from the Merit System Protection Board." 5 U.S.C. § 1221(a). If the

---

[4] The procedure for appeals to the EEOC is set forth at 29 C.F.R. §§ 1614.401 et seq.

[5] TSA personnel are covered by some, but evidently not all "merit system principles" applicable to executive agencies. *See* 5 U.S.C. § 2304(a) (extending to TSA personnel the protection of 5 U.S.C. § 2302(b)(1), (8), and (9), and "any provision of law implementing" those sections, and "any rule or regulation prescribed" thereunder).

[6] Under Title 5, Part III, Subpart F, Chapter 75, adverse actions are classified into two categories: (1) suspension for 14 days or less (the subject of subchapter I) and (2) removal, suspension for more than 14 days, reduction in grade or pay, or furlough (the subject of subchapter II). 5 U.S.C. §§ 7501 – 7514. Only the latter adverse actions are appealable to the MSPB. Proceeding with an appeal before the MSPB is an alternative to proceeding with an EEO complaint before the agency and the EEOC.

employee or former employee is "adversely affected or aggrieved by a final order or decision of the Board," she "may obtain judicial review of the order or decision." *Id.* § 1221(h)(1).

The appellate procedure before the MSPB and the judicial review process following a decision of the MSPB are set forth at 5 U.S.C. §§ 7701 – 7703. "Such an appeal may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* …" *Kloeckner*, 133 S. Ct. at 600.

> When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a "mixed case." See 29 CFR § 1614.302 (2012). The CSRA and regulations of the MSPB and Equal Employment Opportunity Commission (EEOC) set out special procedures to govern such a case—different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory. See 5 U.S.C. §§ 7702, 7703(b)(2) (2006 ed. and Supp. V); 5 CFR pt. 1201, subpt. E (2012); 29 CFR pt. 1614, subpt. C.

*Id.* at 601 (emphasis in original).

An employee who is unsuccessful with her mixed case before the MPSB and wants to pursue her mixed case in district court may either file suit in the district court after receiving notice of the MSPB's decision, or ask the EEOC to review the MSPB decision by filing an appeal with the EEOC's Office of Federal Operations before filing in district court.[7] 5 U.S.C. § 7702(a)(3), (b)(1); 29 C.F.R. § 1614.303(a), (b); 5 C.F.R. § 1201.157;

---

[7] A third option would be to abandon the discrimination claim and ask the Federal Circuit to review the employment action that gave rise to the MSPB proceeding. 5 C.F.R. § 1201.157.

*Montgomery v. Donahoe*, 602 F. App'x 638, 642 (7th Cir.), *reh'g denied* (Apr. 2, 2015), *cert. denied sub nom. Montgomery v. Brennan*, 135 S. Ct. 2909 (2015), *reh'g denied,* 136 S. Ct. 23 (2015).

### 3. *Interplay between the EEO process and the MSPB process*

Federal regulations recognize that an employee may bring a mixed case in two different administrative venues. When an employee wishes to pursue a mixed case, she may begin with an appeal to the MSPB, or she may begin the EEO process by filing a complaint with her agency's EEO office and then appealing an unfavorable final action to the MSPB. 29 C.F.R. § 1614.302; 5 C.F.R. § 1201.154. The employee cannot maintain the same mixed case in both administrative forums and must exhaust her administrative remedies in the forum where she first filed her mixed case. 29 C.F.R. § 1614.302(b); *Rodgers v. Perez*, 139 F. Supp. 3d 67, 71 (D.D.C. 2015).

An employee can and often will commence the EEO process with the employing agency before the agency takes adverse action that would be within the jurisdiction of the MSPB. In other words, an employee often initiates the EEO process before the employee's "mixed case" has accrued for purposes of administrative law.[8] For example, in this case, Plaintiff contacted her agency's EEO office in advance of her removal and complained that various negative assessments regarding her performance constituted harassment and were motivated by gender-bias and resentment arising from her July 20, 2012, informal EEO complaint. Plaintiff's informal complaint activity resulted in an investigation within the

---

[8] For present purposes, the MSPB did not have jurisdiction until Plaintiff was removed from her position. 5 C.F.R. § 1201.3(a)(1), (5).

jurisdiction of the agency's EEO office. Plaintiff, however, did not have a mixed case within the MSPB's jurisdiction until TSA removed her from employment on October 9, 2012.

Whenever an employee initially files an EEO complaint and subsequently experiences an adverse action within the jurisdiction of the MSPB, the question arises as to whether the employee's pending EEO matter merges with or should be merged with the mixed case to avoid splitting the claim at the administrative level.[9] The EEOC has promulgated a "management directive" on the "fragmentation" issue. EEO Management Directive 110, ch. 5, § III, 2015 WL 4885923 (EEOC Aug. 5, 2015). Management Directive 110 provides that agencies reviewing EEO complaints "must avoid fragmenting EEO complaints." *Id.*

> The fragmentation, or breaking up, of a complainant's legal claim during EEO complaint processing has been a significant problem in the federal sector. For complainants, fragmented processing can compromise their ability to present an integrated and coherent claim of an unlawful employment practice for which there is a remedy under the federal equal employment statutes. For agencies and the Commission, fragmented processing substantially increases case inventories and workloads when it results in the processing of related matters as separate complaints.

*Id.* The Directive underscores the importance of avoiding the fragmentation of claims: "The fragmentation of EEO claims must be prevented at all levels of the complaint process, including pre-complaint EEO counseling." *Id.* The EEOC further advises "that a proposed

---

[9] "A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1).

action merges with the decision on an appealable matter – for example, a proposed removal merges into the decision to remove." *Id.*

Management Directive 110 thus provides that a non-mixed case can merge into a mixed case upon an employee's removal from employment. Where a complainant's non-mixed matter is already pending when the adverse action within the jurisdiction of the MSPB occurs, the agency is directed to instruct the complainant of the need to make an election to either proceed with a mixed case complaint before the agency or proceed with a mixed case appeal before the MSPB. 29 C.F.R. § 1614.302(b). [10]

## B.    Res Judicata

The legal doctrine of res judicata concerns the preclusive effect of prior judgments on claims or issues raised in subsequent litigation. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New*

---

[10] Management Directive 110 also provides some guidance as to how to avoid the fragmentation of claims. Counselors and investigators are advised to distinguish between the employee's claim and the evidence offered in support of the claim. Where several incidents ripen into a claim of, for example, a "pattern of ongoing discrimination," the Directive counsels against a rush to treat each underlying incident "as a separate and distinct legal claim." EEO Management Directive 110, ch. 5, § III.A (example 2). The Directive similarly advises that "subsequent incidents" should not be considered a separate EEO complaint where the new incident is "like or related to the original complaint." *Id.*, ch. 5, § III.B.

*Hampshire v. Maine*, 532 U.S. at 748 – 49).  Defendant argues that Plaintiff's voluntary dismissal of *Hagerman I* with prejudice bars litigation of the Title VII claims asserted in this case.  (Motion to Dismiss at 10.)  Defendant, therefore, asserts claim preclusion in support of the motion to dismiss.

"Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court."  *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 582 (1st Cir. 1995).  "Federal claim preclusion law bars a plaintiff from litigating claims in a subsequent action that could have been, but were not, litigated in an earlier suit."  *Silva v. City of New Bedford*, 660 F.3d 76, 78 (1st Cir. 2011).[11]  "[T]he elements of a res judicata defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions."  *In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003).

Here, the parties do not dispute that elements 1 and 3 are satisfied.[12]  The issue is whether Plaintiff's Title VII claims asserted in *Hagerman I* and this action are sufficiently

---

[11] Claim preclusion is a modern term for what was traditionally described as the doctrine of "merger and bar."

> Traditional merger and bar doctrine prevents a party from asserting a claim previously decided on the merits by a final judgment in another case between the same parties (or their privies): the re-asserted claim is deemed "merged" into the prior judgment if the plaintiff had won or "barred" by it if the plaintiff had lost. *See* Restatement (Second) of Judgments § 18 & cmt. a (1982) (merger); *id.* § 19 (bar).

*AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005).

[12] "[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criterion."  *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998).

identical to require claim preclusion. The First Circuit Court of Appeals applies a "transactional approach" to determine whether two claims are sufficiently related to warrant claim preclusion. *Silva*, 660 F.3d at 79.

> The transactional approach does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether the underlying factual bases for the causes are related in time, space, origin or motivation. In other words, we will find the required relationship if both sets of claims— those asserted in the earlier action and those asserted in the subsequent action—derive from a common nucleus of operative facts.

*Id.* (internal quotation marks, ellipses, and citation omitted). The transactional analysis, with its focus on whether different causes arise from the same nucleus of operative fact, does more than simply "prevent plaintiffs from 'splitting' causes of action"; it "also operates as a kind of common-law compulsory joinder requirement, promoting judicial economy through the consolidation of related claims." *Negron-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 8 (1st Cir. 2008). Consequently, "[i]n most situations involving federal claims, it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction or set of related transactions as the previously decided claim." *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 31 (1st Cir. 2005). "The implicit rationale is that for the sake of efficiency, all such claims should be brought together, if this is possible." *Id.*

"The judicial expansion of claim preclusion doctrine … is still a work in progress." *Negron*, 532 F.3d at 10 (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4464.1 (2002)). "[C]ompulsory

claim … rules, created by courts outside the framework of the Federal Rules of Civil Procedure, have dangers as well as advantages." *Id.*[13]

## C. Analysis

Like private-sector employees, federal-sector employees are entitled to *de novo* review in federal court of their Title VII claims. *Chandler v. Roudebush*, 425 U.S. 840, 861 – 64 (1976). However, "Title VII claims are not immune from res judicata." *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011). Plaintiff maintains that res judicata is inapplicable because the termination of her employment, the subject of this action, occurred after the conduct about which she complained in *Hagerman I*.

### 1. *Application of res judicata*

The First Circuit Court of Appeals has determined that Title VII employment discrimination actions resolved in district court can preclude later actions filed in district court based on related conduct. In *Havercombe v. Department of Education of the Commonwealth of Puerto Rico*, 250 F.3d 1 (1st Cir. 2001), the plaintiff alleged that over a multi-year period extending through 1997, his state employer engaged in harassment and failed to promote him due to racial bias. A jury agreed and awarded the plaintiff damages. *Id.* at 2. Shortly after the district court entered final judgment in 1999, the plaintiff filed a second action in which he alleged the harassment continued after 1997. *Id.* at 2 – 3. The Court thus had to consider "whether the alleged subsequent discrimination that continued from 1997 until 1999 (partially covered by a later EEOC administrative complaint filed in

---

[13] Federal Rule of Civil Procedure 15 regarding amended and supplemental pleadings is written in permissive rather than mandatory terms.

1998) can properly be considered to be part of the same transaction or series of connected transactions adjudicated to a final judgment in [the preceding case]." *Id.* at 4.

For guidance as to the meaning of "transaction" and "series," the Court looked to the Restatement (Second) of Judgments and identified the relevant factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* at 4 – 5 (quoting Restatement (Second) of Judgments § 24). In particular, noting the "federal rules' 'considerable freedom of amendment and [the system's] … willing[ness] to tolerate changes of direction in the course of litigation," the Court held that the first judgment extinguished the later filed claim. *Id.* at 5 (quoting Restatement (Second) of Judgments § 24, cmt. a). While multiple factors supported the Court's determination, the following factors are noteworthy: the first suit included a hostile work environment claim for which later incidents would have been additional evidence that would logically fit in the same litigation unit; the absence of a new discrete act of discrimination that would be independently actionable; the newly-asserted incidents were known to the plaintiff before the commencement of trial proceedings in the first action; the new incidents could have augmented the plaintiff's damages award in the first action. *Id.* at 6 – 7.

The Court also considered the potential significance of the administrative proceedings regarding the later-filed action. The later-filed action was not administratively exhausted until shortly before the trial of the first action. *Id.* at 8. Noting that the plaintiff could have requested a stay and could have requested that the EEOC accelerate its

proceedings[14] in order to enable an amendment of the pleadings in advance of trial, the Court was not persuaded that the lack of exhaustion should generate a different result. *Id.* at 8. ("[G]iven that the general rule in the federal courts is to liberally permit amendments where justice so requires, his failure to so amend has foreclosed him from bringing them at all."). The Court discerned "no principled basis for reaching a different result where … the plaintiff obtained permission to sue from the EEOC while his first suit was still pending." *Id.* (quoting *Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 62 (1st Cir. 2000)). Nevertheless, the Court observed that a different result might have been possible had the plaintiff asserted "fresh causes of action" in the second lawsuit. *Id.* A fresh cause of action would have required facts regarding a different transaction or series of transactions. *Id.* at 9.

Plaintiff contends her claim is a fresh claim based on a different transaction because the claim is based on the termination of her employment and not the adverse action that occurred prior to termination. Plaintiff argues that her termination is subsequent conduct similar to the subsequent conduct in *Gonzalez-Pina v. Rodriguez*, 407 F.3d 425 (1st Cir.

---

[14] In addition to the two options identified by the First Circuit, the Seventh Circuit has held that there are three other approaches to the problem.

> We have held that a litigant in this position has at least five options to preserve his claim: (1) he can ask the EEOC or its state counterpart to accelerate the administrative process; (2) he can seek an agreement with his former employer not to plead the statute of limitations; (3) he can agree with his employer to split a single claim into two or more suits; (4) he can delay the filing of the first suit until the last possible moment; or (5) he can request that the court postpone or stay the first case until he receives the right-to-sue letter.

*Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011) (internal quotation marks, brackets, and citation omitted).

2005), where the Court permitted the plaintiff to assert an employment-related claim after judgment entered in an earlier employment claim. In *Gonzalez*, however, the plaintiff asserted in his second action a claim based on new conduct that occurred after judgment entered in the first action. *Id.* at 428, 430. In contrast, the subsequent conduct of which Plaintiff complains in this action did not occur after the resolution of *Hagerman I*. Rather, while the conduct (i.e., the termination of Plaintiff's employment) occurred after the conduct alleged in *Hagerman I*, the conduct actually occurred before Plaintiff filed her complaint in *Hagerman I*.

Plaintiff also relies on the Eleventh Circuit's decision in *Pleming v. Universal-Rundle Corporation*, 142 F.3d 1354 (11th Cir. 1998). In *Pleming*, the circuit court held that the district court's entry of judgment on res judicata grounds was erroneous, where the action was based on incidents of alleged discrimination that occurred while the prior litigation was pending. *Id.* at 1356. In short, the plaintiff's first action arose from the alleged discriminatory failure to hire the plaintiff for one position in 1993, whereas the plaintiff's second action arose from the failure to hire her for two different positions in 1994. The plaintiff filed her first action in 1994, before the other two positions became available. Summary judgment entered against the plaintiff's first action in 1996. *Id.* at 1356 – 57. The circuit court determined that the permissive rules governing the amendment of pleadings did not justify claim preclusion, even though the plaintiff had introduced evidence regarding the 1994 positions in support of her pretext argument in the first case. *Id.* at 1357. The Court explained that "res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Id.* Unlike in

*Pleming*, Plaintiff's claim based on the termination of her employment was not an "after-acquired claim." Plaintiff's employment was terminated before she filed the complaint in *Hagerman I*.[15]

Because the conduct (i.e., Defendant's termination of Plaintiff's employment) occurred before Plaintiff commenced *Hagerman I* and because the circumstances underlying the termination are the same circumstances Plaintiff cites to support the claims she asserted in *Hagerman I*, the pertinent legal authority and the relevant factors identified by the First Circuit in *Havercombe* appear to compel application of res judicata to preclude Plaintiff from proceeding in this action.

### 2. *Exceptions to the application of res judicata*

Plaintiff argues that certain exceptions to res judicata apply under the circumstances of her case. (Pl.'s Opposition to Motion to Dismiss at 12 – 13, ECF No. 17.) Specifically, Plaintiff argues (a) that given the nature of the MSPB's limited jurisdiction over mixed cases, her pursuit of her claims through separate administrative proceedings cannot reasonably be characterized as "claim splitting" and (b) that Defendant acquiesced to the splitting of Plaintiff's mixed case claims from her other EEO matters, including by not

---

[15] The Eleventh Circuit has recognized this distinction. For example, in *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1240 & n.9 (11th Cir. 1999), the Eleventh Circuit concluded that this factual distinction called for a result different than the one it reached in *Pleming*. The existence of an accrued cause of action against a defendant at the time of filing a complaint in court is generally a significant factor in the res judicata calculus. *See*, *e.g.*, *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) ("The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.") (citation and internal quotation marks omitted).

arguing "at any point during the three-year litigation of the plaintiff's mixed-case appeal … that the assertion of unlawful discrimination in her mixed-case claim was foreclosed by the alleged identical nature of the 2012 EEO discrimination complaint." (*Id.* at 13.) Plaintiff in essence invokes two exceptions to res judicata recognized in the Restatement (Second) of Judgments:

> (1) When any of the following circumstances exists, the general rule of § 24 [claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
>
> …
>
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim ….

Restatement (Second) of Judgments § 26(1)(a), (d).

### a.    *Equitable implementation of a statutory scheme*

Plaintiff contends that the separate administrative proceeding before the MSPB on Plaintiff's removal from her position, and the requirement of administrative exhaustion before she could commence this action, constitute a scheme that contemplates claim-splitting and thus res judicata should not bar this action.   In particular, Plaintiff argues the different administrative processes applicable to the claims she asserted in *Hagerman I* and in this action dictated the different dates on which she commenced the two actions in this Court.   She contends that the claim asserted in this action was not administratively

exhausted until well after the administrative claims involved in *Hagerman I* were exhausted, and after *Hagerman I* was dismissed.[16] She maintains she should be permitted to proceed on the separate administrative course regarding her removal without concern that she might compromise her ability to assert in this Court a "mixed case" based on the termination of her employment.

Due to the limited nature of MSPB jurisdiction, which requires the challenge to a suspension of longer than 14 days or the removal from employment, and an employee's ability to pursue EEO remedies based on other adverse employment conditions or actions, the statutory and regulatory scheme applicable to federal-sector employees commonly results in parallel administrative proceedings that involve related claims of discrimination. The jurisdiction for private-sector administrative complaints can also result in parallel proceedings. In that context, the First Circuit was not persuaded that separate Title VII administrative proceedings that resulted in separate right to sue letters justified claim splitting in the district court where it was possible for the plaintiff to join the claims. *Havercombe*, 250 F.3d at 8. The First Circuit, therefore, has not, at least to this point, applied the statutory scheme exception articulated in the Restatement (Second) of Judgments § 26(1)(d). In fact, the First Circuit in *Havercombe* cautioned against the application of equitable exceptions to res judicata:

> As a last-ditch effort, plaintiff claims that the equitable exception to the res judicata doctrine should apply here, *i.e.,* that equity demands the suspension of the doctrine in this case. The Supreme Court has, however, counseled us to adhere to traditional principles of res judicata and not to make any "ad hoc

---

[16] According to her complaint in this action, following the conclusion of the administrative proceeding, Plaintiff received a notice of right to file a claim in court on January 19, 2016. Plaintiff filed the complaint in this action on February 16, 2016.

determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401 (1981). *See also Johnson v. SCA Disposal Servs., Inc.,* 931 F.2d 970, 977 (1st Cir. 1991) (citing *Moitie* for the proposition that "we cannot relax the principles of claim preclusion even if we find that the equities cry out for us to do so").

250 F.3d at 9.

Consistent with the First Circuit's reasoning in *Havercombe,* to permit the judgment in *Hagerman I* to have claim preclusive effect is not "plainly inconsistent with the fair and equitable implementation of [the] statutory … scheme"; nor "is the sense of the scheme that the plaintiff should be permitted to split his claim" in court. Restatement (Second) of Judgments § 26(1)(d).[17] Accordingly, Plaintiff's statutory scheme equitable argument fails.

b. *Acquiescence*

Plaintiff cites several courts, including the First Circuit, which have recognized an exception to the application of the res judicata doctrine where the moving party acquiesced in the splitting of claims. In *Calderon v. Rosado*, 805 F.2d 1085 (1st Cir. 1986), the First Circuit considered whether a plaintiff's voluntary dismissal with prejudice of an action for wrongful discharge brought in the Commonwealth of Puerto Rico barred a subsequent age discrimination case filed in federal court. Review of *Calderon* suggests that the two actions considered by the First Circuit were pending at the same time. The plaintiff evidently filed

---

[17] Moreover, even in the administrative venue, claim splitting is not compelled by the statutory scheme. For example, Plaintiff could have joined her mixed case with her other EEO matters by amending her EEO complaint. 29 C.F.R. § 1614.302. Alternatively, Plaintiff might have dismissed her EEO complaint upon filing her mixed case appeal with the MSPB. Thus, assuming arguendo that the agency could have resisted any further proceeding on Plaintiff's EEO complaint on jurisdictional grounds, as a matter of law its failure to do so did not prevent Plaintiff from joining her discriminatory removal claim in *Hagerman I*.

the federal court ADEA claim three months after the filing of the wage claim in the Puerto Rico court. The plaintiff then expressed his intent to withdraw the Puerto Rico case because the remedy in federal court was preferable. The defendant agreed provided the wage claim was dismissed with prejudice.

Upon review of certain docket entries in the commonwealth action, the First Circuit observed that "[i]t is clear … that plaintiff never expected his voluntary dismissal with prejudice of his [claim based on a Puerto Rico statute] would bar him from litigating his ADEA claim." *Id*. at 1086. In reversing the trial court's dismissal of the federal action on res judicata grounds, the Court wrote:

> [A] recognized exception to the general rule prohibiting claim splitting is that if the parties agree, or a defendant implicitly assents, to a plaintiff splitting his claim, then a judgment in an earlier action which normally would bar the subsequent action will not. *See Restatement (Second) of Judgments* § 26(1)(a) (1982) (normal res judicata rules do not apply if the "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"). And a defendant consents or acquiesces when he fails timely to object. *Restatement (Second) of Judgments* § 26, comment a, illustration 1, gives as an example of acquiescence, a defendant who, while two actions on parts of the same claim are pending, fails to object to the claim splitting. If, after judgment enters on one of the two, the defendant then moves to dismiss the second on res judicata grounds, the motion should be denied, the Restatement indicates. The rationale is that a main purpose behind res judicata principles is to protect a defendant from the harassment of multiple actions. A defendant who fails timely to complain waives the benefit.

*Id*. at 1087. The First Circuit has since characterized *Calderon* as follows:

> *Calderon Rosado* stands for the proposition that if a defendant fails to object to claim splitting prior to an adjudication on the merits of the first claim, the *res judicata* defense may be deemed waived in the second claim. *See Calderon Rosado,* 805 F.2d at 1087. The policy behind this exception is that it would be unfair to allow a defendant to use *res judicata* to defend a second

claim if, influenced by its consent to the claim splitting, the plaintiff voluntarily dismissed its first claim.

*Barreto-Rosa v. Varona-Mendez*, 470 F.3d 42, 46 (1st Cir. 2006).

In this case, Defendant acknowledges Plaintiff's general right to pursue a "mixed case" regarding the termination of her employment following resolution of her administrative appeal, and agrees Plaintiff can seek judicial review of the administrative decision regarding the termination of her employment, but contends Plaintiff forfeited her ability to assert a Title VII claim in this Court when *Hagerman I* was dismissed with prejudice. (Reply at 3, ECF No. 19.) The issue is whether under the circumstances, Defendant can be deemed to have agreed to (i.e., acquiesced to) or waived objection to Plaintiff's ability to pursue a "mixed case" following the conclusion of the administrative proceedings regarding the termination of her employment.

The analysis begins with the pleadings in *Hagerman I* and this action. The pleadings establish that throughout the pendency of the *Hagerman I*, Plaintiff plainly and repeatedly asserted that following completion of the proceedings before the MSPB, she intended to pursue an action in federal court based on the termination of her employment. Defendant, therefore, was clearly on notice that Plaintiff intended to continue to challenge the termination of her employment in federal court. Given that Plaintiff had not asserted a claim in *Hagerman I* based on her termination, but had alerted Defendant to her desire to assert such a claim, Defendant was also on notice that Plaintiff's continued challenge would logically include a "mixed case" following completion of the administrative proceeding regarding the termination of her employment.

The pleadings also establish that the dismissal in *Hagerman I* was not the result of the negotiated resolution of Plaintiff's claims, nor was it the result of judicial action on the merits of Plaintiff's claims.[18]  Rather, it was Plaintiff's voluntary act to conclude the claims asserted in *Hagerman I*, which claims did not include the termination of her employment. As with the plaintiff in *Calderon*, Plaintiff did not expect the dismissal would bar her from litigating her claim in this action.  Unlike in *Calderon*, however, the pleadings in *Hagerman I* do not explicitly reflect that Plaintiff dismissed the claims in *Hagerman I* with Defendant's understanding and acknowledgment that she would pursue a termination-related claim in this case.

While the pleadings in the two cases suggest Plaintiff intended to pursue a "mixed case" in federal court upon completion of the proceedings before the MSPB, the pleadings alone are insufficient to establish that Defendant acquiesced to Plaintiff's splitting her claims in court.  The administrative proceedings, however, are also relevant to Defendant's possible acquiescence.[19]  The TSA, for whom Defendant appears in this matter, was

---

[18] In this way, Plaintiff's case is distinguishable from *Havercombe*, in which the Court was evidently not asked to consider an acquiescence argument, and where the plaintiff's first action was tried to a jury with a verdict rendered in favor of the plaintiff.  The case is more akin to the First Circuit's decision in *Calderon*, where the plaintiff voluntarily dismissed the first action with prejudice in the Commonwealth of Puerto Rico, but was permitted to assert a claim in federal court.

[19] Because analysis of Plaintiff's acquiescence argument generated a question as to the relevance of the administrative proceedings to an assessment of the acquiescence argument, I convened a telephonic conference with the parties to discuss the issue.  At the conclusion of the conference on January 4, 2017, I invited the parties to submit any legal authority they deemed relevant to the issue.  Both parties provided additional legal authority, which I have reviewed and considered.  None of the legal authority directly involves the issue here – whether in the context of an administrative proceeding, a party can acquiesce to the splitting of the claims a plaintiff subsequently files in federal court.  Logic, however, suggests a court's assessment is not limited to the parties' conduct in the litigation.  Otherwise, a potential defendant could agree to the splitting of a claim during pre-suit discussions yet still assert a res judicata defense.

involved in the administrative proceedings. As explained above, the EEOC's directives require early intervention in the administrative process to avoid the fragmentation or splitting of the claims that might be within the jurisdiction of an agency's EEO and the related claims within the jurisdiction of the MSPB.

Whether Defendant's conduct in *Hagerman I* and before the MSPB can fairly be characterized as Defendant's acquiescence to Plaintiff's claim splitting cannot be definitively discerned on the pleadings at this stage of the proceedings. For instance, the pleadings lack any evidence of the positions asserted by Defendant in the administrative process,[20] including in any proceedings conducted in accordance with the objectives of Directive 110 to avoid the fragmentation or splitting of the claims, or whether Defendant asserted a position or made any statements that might reasonably be construed as Defendant's acquiescence to Plaintiff's claim splitting. In other words, the Court cannot dismiss or reject Plaintiff's acquiescence argument based solely on the pleadings. Because evidence outside the pleadings is necessary to determine whether res judicata precludes Plaintiff from asserting her claim in this action, Defendant cannot prevail on its motion to dismiss.[21]

---

[20] Assuming that Defendant did not direct Plaintiff to split her claims between its own EEO forum and the MSPB forum, Defendant's failure to object to claim splitting or fragmentation at the administrative level alone likely would not support an inference of acquiescence or waiver. *Walczak v. Bd. of Educ. of City of Chicago*, No. 1:11-CV-08409, 2012 WL 3134351, at *2 – 3 (N.D. Ill. Aug. 1, 2012), *aff'd*, 739 F.3d 1013 (7th Cir. 2014). Even if the fragmentation at the administrative level was Plaintiff's choice, statements or positions taken by Defendant in the MSPB forum following Plaintiff's filing of *Hagerman I* might still be deemed inconsistent with its assertion of the res judicata defense in this case.

[21] Claim preclusion is an affirmative defense, and "[o]rdinarily, it is incumbent on the defendant to plead and prove such a defense." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). While claim preclusion is often raised in a motion to dismiss, where the non-movant raises an objection that calls for consideration of matters outside the pleadings, "it is better to treat the motion as one for summary judgment." 18 Charles

## CONCLUSION

Based on the foregoing analysis, I recommend the Court:

1. Determine that Plaintiff's Title VII claim in this action is based on the same transaction or series of connected transactions adjudicated to a final judgment in *Hagerman I*, and thus the claim is not a "fresh claim;"

2. Determine that the statutory administrative schemes do not warrant an exception to the ordinary rules of res judicata; and

3. Deny without prejudice Defendant's motion to dismiss based on the possible application of the acquiescence exception to res judicata, but permit Defendant, with an established record, to reassert its res judicata defense.

## NOTICE

Any objection to this Recommended Decision and Order shall be filed in accordance with Fed. R. Civ. P. 72. With respect to the order on non-dispositive matters (i.e., the order on the motion to amend), a party may serve and file objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(a).

With respect to the recommendations made herein, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument

---

Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4405 (2002)); *see also In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007) ("Res judicata is an affirmative defense, but where, as here, the defendant has raised the question on motion to dismiss, the plaintiff does not object to the procedure, and the court discerns no prejudice, the issue may be resolved on such a motion.") The Court, however, is not required to convert the motion to dismiss to a motion for summary judgment, particularly where the factual record is incomplete. *See Gerard v. N. Transp., LLC,* 146 F. Supp. 2d 63, 64 – 65 (D. Me. 2001). Here, while Plaintiff has raised a plausible basis for an exception to res judicata, because neither party has submitted evidence outside the pleadings relevant to an assessment of the applicability of the exception in this case, the motion to dismiss cannot practicably be converted to a motion for summary judgment.

before the district judge, if any is sough, within fourteen (14) days of being served with a copy. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection. Fed. R. Civ. P.

72(b)(2). Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of January, 2017.